IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KENT G. SAVAGE,                      )
                                     )
            Petitioner,              )
                                     )
                                     )        CIV-14-764-HE
v.                                   )
                                     )
JANET DOWLING, Warden,               )
                                     )
            Respondent.              )


REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging his convictions for

Indecent or Lewd Acts with a Child Under Sixteen (Counts I through X), First Degree Rape

by Instrumentation (Counts XI and XII), and Exhibition of Obscene Materials to a Minor

Child (Counts XIII and XIV) entered in the District Court of Oklahoma County, Case No.

CF-2010-750.[1]  Respondent has responded to the Petition and filed the relevant state court

records, including a transcript of the trial. (hereinafter TR ___).  Petitioner has filed a Reply.

The matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that

the Petition be denied.

---

[1]For these convictions, Petitioner was sentenced to 20 year terms of imprisonment for each
of Counts I through VI; 15 year terms of imprisonment for each of Counts VII through X; life
imprisonment for each of Counts XI and XII; and three year terms of imprisonment for each of
Counts XIII and XIV, with each sentence to be served consecutively.

I. <u>Background and Claims</u>

Following a referral to the Oklahoma City Police Department and the Oklahoma Department of Human Services ("DHS") from a school counselor, an investigation was conducted into allegations of child sexual abuse involving Petitioner's two female children and another minor female.    In February 2010, Petitioner was charged in a 14-count information filed in the District Court of Oklahoma County, Oklahoma, Case No. CF-2010-750.

On October 18, 2010, Petitioner appeared in court with retained counsel and waived his preliminary hearing.  Prior to trial, the prosecution filed a Notice of Intent to Introduce Child Hearsay involving statements made by the victim, O.S., to three individuals, Ms. Savage, Ms. McCarty, and Ms. Rider; statements made by the victim, M.S., to a third victim, A.H., and to Ms. Savage, Ms. McCarty, and Mr. Minton; and statements made by the victim, A.H., to Ms. Hamilton, Ms. Rider, and Ms. Robinson.

In June 2011, at the beginning of Petitioner's trial, defense counsel moved to preclude admission of the victims' hearsay statements, arguing that under the Confrontation Clause and state legal precedent the hearsay statements of the three victims could not be admitted at trial prior to the testimony of the three victims because Petitioner had not had a prior opportunity to question the victims.  TR vol. II, at 67-70.

The court heard arguments from counsel outside of the presence of the jury regarding the admissibility of three recorded statements by the child victims that the prosecution

intended to offer into evidence pursuant to Okla. Stat. tit. 12, § 2803.1.[2] TR vol. II, at 71-108.

The court ruled that the recorded statements were admissible based on the court's findings

that the children were available to testify and would testify at trial, "the C.A.R.E. Center

[where the recorded interviews took place] is a non-suggestive setting," the questions "asked

by the interviewers were non-suggesting and non-leading," and, finally, "the language and

terminology used by these young girls in the interview was appropriate under the

circumstances," "tend[ed] to indicate that they know things that maybe they shouldn't know

at that age," and "were . . . internally consistent." TR vol. II, at 74-75. Based on these

findings, the trial court found that "the totality of the circumstances [showed] there is

sufficient indicia of reliability [so] as to render these recordings trustworthy" and admissible.

Id. at 75. Further, the trial court found that the recordings and hearsay testimony could be

admitted before the child victims testified. Id.

With regard to the hearsay statements of the victims to each other and to other

individuals, the trial court conducted a hearing outside of the presence of the jury and made

the following findings:

> There are four different occasions that are in question here in
> regard to [O.S.]. The initial statement that she made to Ms.
> McCarty when she was brought to Ms. McCarty's office by her
> third grade teacher; the following statement on September 17th
> of 2009; the next one being on September 23rd of 2009; and the
> final conversation with [O.S.] on the 24th of September, 2009.

---

[2]This statute concerns the admissibility of statements made by children younger than 13
years old or incapacitated persons describing acts of physical abuse or sexual contact. It requires
that the court conduct a hearing outside the presence of the jury and find "that the time, content and
totality of circumstances surrounding the taking of the statement[s] provide sufficient indicia of
reliability so as to render [them] inherently trustworthy." 12 Okla. Stat. tit. 22, § 2803.1.

> There was also a conversation with [M.S.] on the 24th of September, 2009.

TR vol. II, at 106-107.

The trial court found that the statements made by O.S. and M.S. to Ms. McCarty were made in a non-coercive setting in the school counselor's office, the questions were not coercive, the girls' responses were appropriate, there was no apparent motive for fabrication by the victim, and the statements were reliable and admissible, considering the factors set out in Okla. Stat. tit. 12, § 2803.1. TR vol. II, at 107-108.

During this hearing, defense counsel, Mr. Ruffin, attempted to question a witness concerning O.S. and "sexual allegations in her previous existence in Florida." TR vol. II, at 100. The witness testified that O.S.'s mother had informed her of the child's "difficult childhood" but she did not know any specific information. TR vol. II, at 101-102. When the trial court questioned Mr. Ruffin about the relevance of this cross-examination, Mr. Ruffin stated that "if this child has been abused before and she's trying to say that, you know, my client did it, I think I have every right to do that. It just goes to - - it's an indicia of reliability. I think it's very relevant." TR vol. II, at 104. The trial court disagreed and ruled that there would be "no more of this line of questioning" during the hearing. Id.

Later, the prosecutor stated that O.S. was rumored to "have been molested by prior caretakers in the state of Florida, prior to being cared for by [Petitioner and his wife]." TR vol. II, at 109. The prosecutor orally moved in limine to exclude any questioning concerning these allegations, and Mr. Ruffin stated that he would be presenting an exhibit and argument concerning this line of questioning. He stated that he "expect[ed] to be denied" the

opportunity to admit evidence concerning "these particular past allegations . . . but [he] want[ed] to preserve it for appeal purposes. . . . " TR vol. II, at 109-110.

The trial court ruled that "[a]ny questions or any answers that would go to any prior sexual conduct by [O.S.] or anybody else in this case is strictly prohibited under the rape shield statute" and sustained the prosecution's motion in limine. TR vol. II, at 110. During the trial, when Mr. Ruffin made an offer of proof concerning an investigation in Florida into possible previous molestation of O.S., the trial court ruled the proffered evidence was "not relevant" and not admissible. TR vol. III, at 95-101.

A jury trial was conducted on the charges on June 20 - 23, 2011. Petitioner failed to appear for the fourth day of trial. The jury found Petitioner guilty of all fourteen charges and recommended sentences ranging from three years to life imprisonment. Petitioner retained different counsel following trial, and his new counsel, Mr. Fisher, represented Petitioner at sentencing and on appeal. In a sentencing proceeding conducted on December 1, 2011, Petitioner was sentenced in accordance with the jury's verdict, as described in footnote 1, *infra*, and the court ordered that each of the sentences be served consecutively. See Original Record, at 181-184 (Judgment and Sentence).

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA"). In his first proposition of error presented in his brief on appeal, Petitioner contended that the admission during his trial of the hearsay statements of the victims to other individuals and the recorded statements of the victims violated his Sixth Amendment right of confrontation and also violated Article 2, § 20 of the Oklahoma

Constitution and Okla. Stat. tit. 22, § 2803. Response, Ex. 1 (Brief of Appellant). In connection with this claim, Petitioner asserted that the victims were unavailable at trial for purposes of his right of confrontation under the Sixth Amendment, that some of the victims' statements were testimonial and their admission during trial violated Crawford v. Washington, 541 U.S. 36 (2004), and that he did not waive or forfeit his constitutional right to confront witnesses against him by waiving his preliminary hearing.

In his second proposition, Petitioner alleged that, if all of the victims' hearsay statements are excluded, insufficient evidence was presented during his trial to convict him of any of the charges. In his third claim, Petitioner asserted that he was denied the opportunity to present a defense due to the trial court's exclusion under Oklahoma's Rape Shield Statute, Okla. Stat. tit. 12, § 2412(A), of evidence and cross-examination regarding the sexual history of O.S. before she was adopted.

In his fourth proposition, Petitioner asserted that improper and speculative expert and lay opinions were admitted during his trial and this testimony improperly bolstered the victims' recorded statements. In Proposition V, Petitioner alleged that he was denied effective assistance of counsel due to his defense attorney's (1) failure to object to improper expert opinion by witnesses Rider and Minton, (2) improper questioning that elicited prejudicial testimony, and (3) failure to advise Petitioner that waiving his preliminary hearing also waived his right to confront and cross-examine witnesses at trial.

In Proposition VI, Petitioner alleged that his sentences were excessive, and in Proposition VII Petitioner asserted that the accumulation of errors during his trial deprived

him of due process. The State responded in opposition to each of Petitioner's grounds for relief. Response, Ex. 2 (Brief of Appellee).

The OCCA issued an unpublished summary opinion on April 24, 2013, in which the court addressed and rejected each of Petitioner's seven propositions of error. Response, Ex. 3 (Savage v. State, No. F-2011-1098 (Okla. Crim. App. Apr. 24, 2013)(Summary Opinion)).

Petitioner now seeks federal habeas relief. In his Petition and brief in support of the Petition (Docs. # 1, 2), Petitioner asserts five grounds for habeas relief. Petitioner alleges in ground one, as he did in Proposition III in his direct appeal, that he was denied his constitutional right to present a defense when the trial court excluded evidence and cross-examination regarding the alleged "prior sexual abuse" of O.S.

In ground two, Petitioner asserts, as he did in Proposition I in his direct appeal, that the admission during his trial of the hearsay statements of the victims and the recorded statements of the victims violated his Sixth Amendment right of confrontation. Response, Ex. 1 (Brief of Appellant). Further, in ground two, Petitioner asserts, as he did in Proposition II in his direct appeal, that without the inadmissible hearsay statements of the victims there was insufficient evidence presented at his trial to convict him of the offenses.

In ground three, Petitioner asserts, as he did in Proposition IV in his direct appeal, that the trial court erroneously admitted improper and speculative expert and lay opinion that improperly bolstered the victims' recorded statements. In ground four, Petitioner asserts that he was denied the effective assistance of trial counsel based on the same alleged deficiencies as he alleged in his direct appeal. In ground five, Petitioner asserts, as he did in his direct

appeal, that the accumulation of errors during his trial denied him a fair trial.

II. Standard of Review of Constitutional Claims

Under the AEDPA, a federal court cannot grant habeas relief with respect to a claim of a constitutional deprivation raised by a state prisoner that was adjudicated on its merits in state court proceedings unless the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652

8

(2004)(*per curiam*)(citations omitted). See Cullen v. Pinholster, 563 U.S. __, 131 S.Ct. 1388 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Further, state-court findings of fact are presumed correct and entitled to deference. 28 U.S.C. § 2254(e)(1).

III. Exclusion of Evidence Regarding Alleged Sexual History of O.S.

In Petitioner's first ground for habeas relief, Petitioner asserts that he was denied the opportunity to present a defense and his trial was rendered fundamentally unfair when the trial court excluded any evidence or cross-examination concerning the alleged "prior sexual abuse" involving his adopted daughter, O.S.

In Petitioner's direct appeal, the OCCA rejected this claim of error, finding

> [t]he trial court correctly found that, although the rape shield statute did not apply, evidence that one of the child victims had allegedly suffered sexual abuse several years earlier was not relevant to any issue at trial. . . . There is no credible claim that the victim was simply mistaken about her abuser; the alleged prior abuse happened when she was much younger, in a different state, and the abuser was her biological father. While the allegations of prior sexual abuse were not proved in court, nothing in the material in this record suggests they were false. They were not necessary to test the victim's credibility, and were not relevant to show her knowledge of sexual acts or vocabulary [and t]he trial court did not abuse its discretion in denying [Petitioner's] requests to admit this evidence.

Response, Ex. 3, at 5-6.

The OCCA relied exclusively on state evidence law and precedent in denying this claim of error. It is well established that the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, laws, or treaties. *E.g.*,

Estelle v. McQuire, 502 U.S. 62, 68 (1991); Mabry v. Johnson, 467 U.S. 504, 507 (1984); Pulley v. Harris, 465 U.S. 37, 41 (1984). See Smith v. Phillips, 455 U.S. 209, 221 (1982)("Federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."). State court evidentiary rulings are cognizable on habeas "only if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002).

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. . . . This right is a fundamental element of the due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967). Nevertheless, both the Oklahoma Evidence Code and the Federal Rules of Evidence prohibit the use of extrinsic evidence to impeach a witness with specific instances of conduct to attack the credibility of the witness. See Okla. Stat. tit. 12, § 2608(B); Fed.R.Evid. 608.

Moreover, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts. . . . [T]he Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues." Crane v. Kentucky, 476 U.S. 683, 689-90 (1986)(internal quotation marks, ellipsis, and brackets omitted).

In this case, although Petitioner disagrees with the OCCA's decision and findings with respect to his claim of evidentiary error, Petitioner has not shown that the trial court's

evidentiary ruling rendered his trial fundamentally unfair. As the OCCA found, the proffered evidence involved only an investigation of unrelated allegations that were unproved in court, allegedly occurred several years earlier, and would not have tended to prove or disprove the victim's credibility. Petitioner has not demonstrated that the OCCA's decision contradicted or unreasonably applied governing Supreme Court authority. Therefore, Petitioner is not entitled to habeas relief concerning this claim.

IV. Admission of Hearsay Testimonial Evidence

Petitioner contends in ground two of the Petition that because he waived his preliminary hearing and the victims did not remember their accusations or refused to testify or recanted their accusations he did not have the opportunity to confront the victims, and therefore the admission of their hearsay testimonial statements violated his Sixth Amendment right of confrontation. In a related claim, Petitioner contends that without the inadmissible hearsay there was not sufficient evidence to support his convictions.

In Petitioner's direct appeal, he raised similar claims. Based on the OCCA's own precedent and applying the Supreme Court's decisions in United States v. Owens, 484 U.S. 554, 559 (1988), and Crawford v. Washington, 541 U.S. 36, 68 (2004), the OCCA concluded that "all three child victims testified at trial and were available for cross-examination." Response, Ex. 3, at 2-3. Further, the court found that "[t]he trial court held separate [Okla. Stat. tit. 12,] § 2803.1 hearings for the videotaped testimony and testimony of witnesses to whom the victims had disclosed the abuse. In each instance, the record supports the trial court's findings, as well as its conclusion that the § 2803.1 factors were met and all the

evidence was admissible." <u>Id.</u> at 4.

In regard to the Petitioner's assertion on appeal that the trial court erroneously held that by waiving preliminary hearing he waived the right to confront and cross-examine witnesses at trial, the OCCA found "[t]here was no such ruling" and "[t]he trial court merely noted, correctly, that by waiving preliminary hearing [Petitioner] had waived any opportunity to cross-examine the child victims at preliminary hearing." <u>Id.</u> at 4-5.

The court also specifically addressed the testimony of a police officer, Officer Robinson, "regarding Lita Savage [that] was offered to impeach her with a prior inconsistent statement." <u>Id.</u> at 5. The court found that Ms. "Savage had the opportunity to explain or deny the statement before it was offered through Robinson, and was properly impeached with specific inconsistent portions of her statement." <u>Id.</u>

The court then specifically addressed certain "hearsay within hearsay in M.S.'s videotaped statement" and found this statement "was not admissible under any hearsay exception." <u>Id.</u> Nevertheless, the court found no error or plain error occurred in the admission of this evidence because "jurors heard O.S.'s story through O.S.'s own forensic interview and other testimony, which was properly admitted." <u>Id.</u> Further, the court found Petitioner had not shown prejudice, and "[o]ther statements were not offered to prove the truth of the matter asserted, there is no hearsay, and admission of these statements did not constitute plain error." <u>Id.</u>

In his Petition and supporting brief, Petitioner merely cites the Supreme Court's decisions in <u>Crawford</u>, <u>supra</u>, and <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). He does not

address the governing habeas standard or attempt to persuade the Court that the OCCA's decision conflicted with or unreasonably applied governing Supreme Court jurisprudence.

The Confrontation Clause appearing in the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The protections of the Confrontation Clause extend to both federal and state prosecutions. Pointer v. Texas, 380 U.S. 400, 406 (1965). The main purpose of the right of confrontation is to secure the opportunity to cross-examine adverse witnesses. Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986).

Interpreting the Confrontation Clause in circumstances involving out-of-court hearsay[3] testimonial statements, the Supreme Court has held that such "[t]estimonial statements of witnesses absent from trial" are admissible only if the declarant is unavailable and when the defendant has had a prior opportunity to cross-examine the declarant. Crawford, 541 U.S. at 59. A hearsay statement is testimonial if its "primary purpose" was "creating an out-of-court substitute for trial testimony." Michigan v. Bryant, 562 U.S. 344, 131 S.Ct. 1143, 1155 (2011).

The opportunity for cross-examination guaranteed by the Sixth Amendment is not commensurate with unlimited cross-examination. While "the Confrontation Clause guarantees an *opportunity* for effective cross-examination," it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might

---

[3]An out-of-court statements is "hearsay" if it is offered "to prove the truth of the matter asserted." Fed.R.Evid. 801(c)(2).

13

wish." Delaware, 475 U.S. at 679 (emphasis in original)(internal quotation marks omitted).

In this case, the OCCA found that "all three child victims testified at trial and were available for cross-examination." Response, Ex. 3, at 2. This factual finding is presumed correct, and Petitioner has not overcome the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

One of the victims, O.S., testified at trial that during an interview at the C.A.R.E. Center with Mr. Minton she "lied for attention." TR vol. III, at 113. O.S. further stated that she was "not going to testify" because she did not "remember anything." Id. at 113-114. Petitioner's defense counsel cross-examined O.S. Id. at 115. Consequently, no Confrontation Clause violation occurred with respect to O.S. See California v. Green, 399 U.S. 149, 158 (1970)("[T]he Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.").

M.S. testified at trial that she did not remember what she told Mr. Minton during an interview at the C.A.R.E. Center and that she did not remember anything her father did to her that was sexually inappropriate. TR vol. III, at 108-109. Petitioner's defense counsel was given the opportunity to cross-examine the victim. Id. at 111.

A.H. testified at trial that she did not remember anything inappropriate that happened with M.S.'s father. Id. at 164, 169. Petitioner's defense counsel was again given the opportunity to cross-examine the victim. Id. at 170.

Because all three of the victims testified at trial and the defense had a full and

effective opportunity to cross-examine the victims regarding their testimony as well as their hearsay testimonial statements, no Confrontation Clause violation occurred. Consequently, the OCCA's decision to admit O.S.'s, M.S.'s, and A.H.'s hearsay testimonial statements was not contrary to, and did not unreasonably apply, clearly established federal law.

With regard to Petitioner's related claim of insufficiency of the evidence, the OCCA applied the governing standard in Jackson v. Virginia, 443 U.S. 307 (1979), as adopted in the court's previous decision in Easlick v. State, 90 P.3d 556, 559 (Okla. Crim. App. 2004), and concluded "[t]aking the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that [Petitioner] committed all the charged crimes." Response, Ex. 3, at 5.

Petitioner's entire argument in support of his claim of insufficiency of the evidence relies on the success of his previous Confrontation Clause claim. He argues that "[w]ithout the out of court statements the remaining evidence, taken [in its] best light for the prosecution fails to established each of the crimes as charged in each of the fourteen (14) counts in the information." Plaintiff's Memorandum to Petition, at 8 (ECF page number 10).

Despite the victims' testimony at trial that they either lied during their out-of-court statements or could not remember any inappropriate behavior by Petitioner involving them, the jury obviously found the victims' multiple out-of-court accounts of repeated sexual abuse by Petitioner made to their school counselor and to forensic interviewers convincing. Even viewing the evidence in the light most favorable to Petitioner, there was more than sufficient evidence presented at Petitioner's trial to support each of his convictions. Petitioner has not

demonstrated that the OCCA's decision was contrary to, or unreasonably applied, the controlling <u>Jackson</u> standard.

V. <u>Error in Admission of Expert Testimony</u>

In ground three of the Petition, Petitioner asserts that the trial court erred by allowing into evidence the "opinions" of two witnesses, Ms. Rider and Mr. Minton, that were "improper and speculative" and "improperly bolstered the child witness' video statement." Petition, at 5.

In his supporting brief, Petitioner first points to certain testimony by the state's witness, Ms. Rider, who testified at Petitioner's trial in her capacity as a forensic interviewer for DHS concerning her separate interviews with O.S. and A.H. TR vol. II, at 169. Ms. Rider testified that when she interviewed O.S. and A.H., O.S. was 9 years old and A.H. was ten years old. TR vol. II, at 174, 176.

After the recorded statements of O.S. and A.H. were played for the jury and during cross-examination of Ms. Rider, Petitioner's counsel asked Ms. Rider whether in her experience as a forensic interviewer "kids change their story" in a subsequent interview. TR vol. III, at 28.

Ms. Rider testified in response to this question that "[k]ids, many times, will change their story when they - It's more common when a child is placed back in the home with a parent that they'll change and - because they'll see that their whole family is falling apart." <u>Id.</u> Defense counsel asked Ms. Rider the "basis" for her testimony, which elicited an objection from the prosecution to the interruption, and the trial court allowed the witness to

continue. <u>Id.</u> at 28-29.  Ms. Rider testified that

> [l]ike I said, it's common for kids to maybe be placed with - - in
> this case, they were placed back home with Mom.  So a lot of
> times, when they see the turmoil that their family is in, they'll
> feel responsible.  They'll feel like it's their fault that Dad's had
> to leave the home or Mom's had to leave the home, or
> sometimes they're put in foster care.  So regardless of what has
> happened generally in a child's life, they love those parents and
> they want that family unit together but - - So, when they start
> seeing what's going on, it's a common thing for them to say,
> "Oh, nothing really happened.  I made that up" or "It wasn't like
> that."  It's very common.

<u>Id.</u> at 29.  Defense counsel then asked the witness for the basis of her testimony, and Ms.

Rider testified that her testimony was based on her training with DHS but not on a scientific

study. <u>Id.</u> at 29-30.

Despite the fact that Ms. Rider's testimony described above was responsive to defense

counsel's questioning, Petitioner argued in his direct appeal, as he does again here, that Ms.

Rider's response was a "court sponsored evidentiary harpoon" and "inappropriate opinion."

Response, Ex. 1, at 42-43; Petitioner's Memorandum, at 9 (ECF page number 11).

Petitioner also refers to a "personal opinion" expressed by Ms. Rider elicited on direct

examination that "with [O.S.], I think she said in there that she was young and, when she

talked about the abuse, it had happened so many times, she had lost track of how many times.

She didn't know.  It just happened every night, every other night, and so it became a normal

thing for her to experience.  So she wasn't as embarrassed about it or anything.  She didn't

realize that that was not - - not what everyone did." TR vol. III, at 9.

Petitioner also refers to certain testimony by Mr. Minton, a forensic interviewer for

the C.A.R.E. Center, a nonprofit child advocacy center. TR vol. III, at 35-36. Mr. Minton testified that M.S. was 12 when he interviewed her. Id. at 62. After the recorded statement of a forensic interview with M.S. was played for the jury, defense counsel cross-examined Mr. Minton. During cross-examination, Petitioner's defense counsel asked Mr. Minton if "kids change their story." Id. at 63. Mr. Minton responded that

> Yes, sir. That happens quite frequently. Disclosure is a process. Oftentimes, you know, there are lots of factors in why a child will change their story and, like I said, it's a process. So a typical disclosure, you know, the child will make their initial disclosure and if . . . they are in active disclosure, sometimes they are not the ones that make the initial disclosure, but then oftentimes there will be a recantation in there and then, you know, followed up with reaffirmation of the disclosure.

Id. at 63-64. Defense counsel then asked if it was possible if "it could be a recantation with no reaffirmation of the story," and Mr. Minton responded that such a situation was possible as well. Id. at 64. Again, despite the fact that Mr. Minton's testimony was responsive to questioning by defense counsel, Petitioner argued in his direct appeal, as he does here, that Mr. Minton's opinion was "directly solicited by the prosecution. . . ." Response, Ex. 1, at 45; Petitioner's Memorandum, at 10 (ECF page number 12).

Relying on a previous decision by the appellate court allowing expert testimony explaining the behavior of child victims, such as changes or recantations of earlier statements, the OCCA held that "the trial court did not abuse its discretion in admitting expert testimony." Response, Ex. 3, at 6. The OCCA further held that Ms. Rider's testimony "was neither an evidentiary harpoon nor any other error. [Petitioner] elicited the testimony, and cannot complain of it. . . . Rather than expressing improper personal opinions, both

witnesses related the same process describing behavior of sexually abused children, which is admissible to explain why a child may change or recant earlier statements." Id. at 6-7.

Although Petitioner contends that Ms. Rider and Mr. Minton did not testify as expert witnesses, the OCCA found that these witnesses provided expert testimony. Petitioner has not overcome the presumption of correctness attached to this finding. 28 U.S.C. § 2254(e)(1).

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court held that Fed.R.Evid. 702[4] "imposes a special obligation upon a [federal] trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999)(quoting Daubert, 509 U.S. at 589). In Kumho, the Court extended Daubert's ruling to "all expert testimony" presented in federal trials. Id.

At trial, Petitioner did not object to the testimony of either Ms. Rider or Mr. Minton on the basis of Daubert/Kumho. Nor did Petitioner object at trial to the expert testimony that particular behaviors were typical with child sexual abuse victims. On appeal, Petitioner cited the Daubert decision but relied entirely on state evidentiary rules to support his argument. Response, Ex. 1, at 41-42.

Although the OCCA did not express its decision in terms of the reliability test established in Daubert/Kumho, the OCCA determined that the witnesses were qualified to testify as to the behavior of sexually abused children. Both witnesses testified to their

---

[4]Under Rule 702(a), a witness qualified as an expert may "testify in the form of an opinion" if the "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702(a).

extensive training and experience in dealing with child victims of sexual abuse. Petitioner has not shown that the OCCA's decision rejecting his claim of improper admission of expert opinions was contrary to or unreasonably applied controlling Supreme Court jurisprudence.

VI. <u>Ineffective Assistance of Trial Counsel</u>

In his fourth ground for habeas relief, Petitioner contends that his defense counsel provided constitutionally ineffective assistance. Petitioner bases this claim on his defense counsel's failure to object to the admission of "improper expert opinion" and to defense counsel's questioning that "elicited prejudicial testimony" by Ms. Rider and Mr. Minton. Petitioner also complains that his trial counsel provided ineffective assistance by failing to advise Petitioner that he was waiving his right of confrontation by waiving his preliminary hearing.

Ineffective assistance claims are analyzed under the now-familiar two-part test established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). "First, [Petitioner] must show that counsel's performance was deficient." <u>Id.</u> at 687. To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." <u>Id.</u> at 687, 688. There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." <u>Id.</u> at 689.

With respect to the second prong of the analysis, Petitioner must show that but for counsel's unprofessional errors, there is a reasonable probability that the result of the

proceeding would have been different. Id. at 694. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id. at 695.

Applying Strickland's two-part standard, the OCCA rejected Petitioner's ineffective assistance of counsel claims. The OCCA first concluded that because it had previously rejected Petitioner's claim that Ms. Rider's and Mr. Minton's testimony was improper, "counsel cannot be ineffective for failing to object to the testimony." Response, Ex. 3, at 8. The court next concluded that Petitioner's claim alleging he had waived his right of confrontation by waiving his preliminary hearing was "based on a misapprehension of law," and therefore he could not show that his trial counsel was ineffective.

Nothing in the trial record supports Petitioner's allegations of attorney ineffectiveness. Defense counsel zealously represented Petitioner throughout the trial, the State's expert witnesses provided testimony that was well within their expertise and experience, and Petitioner was not denied his right of confrontation of the victims. Petitioner has not demonstrated that the OCCA's decision was contrary to or an unreasonable application of Strickland's controlling standard.

VII. Cumulative Errors

In his fifth and final ground for habeas relief, Petitioner asserts, as he did in his direct appeal, that he has been deprived of a fair trial due to the multiple errors alleged in the foregoing habeas grounds. The Tenth Circuit Court of Appeals has addressed the issue of cumulative errors and explained that "[i]n the federal habeas context, cumulative-error

analysis 'aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless,' an analysis ... undertake[n] only if there are at least two errors." Fairchild v. Trammell, __ F.3d __, 2015 WL 1843529, *20 (10th Cir. 2015)(quoting Lott v. Trammell, 705 F.3d 1167, 1223 (10th Cir. 2013)). See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998)(cumulative error analysis "applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors").

In this case, there are no errors of constitutional magnitude, and Petitioner has not shown that any such errors prejudiced him. Therefore, he is not entitled to habeas relief.


## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by _____ May 25th _____ , 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this ___5th___ day of ___May___, 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE